UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHARLENE KAY SICKMILLER,

        Plaintiff,

v.                                                                Case No. 8:19-cv-3087-SPF

ANDREW M. SAUL,
Commissioner of the Social
Security Administration,

        Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

    **I.**    **Procedural Background**

Plaintiff filed an application for DIB on February 21, 2017 (Tr. 15, 177-80).[1] The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 77, 91). Plaintiff then requested an administrative hearing (Tr. 106-07). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 32-68). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 12-31). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied

---

[1] All references to "Tr." refer to the transcript and page numbers of the Social Security administrative record filed on February 11, 2020 (Doc. 12).

(Tr. 1-6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.     Factual Background and the ALJ's Decision

Plaintiff, who was born on May 8, 1965, claimed disability beginning November 6, 2015 (Tr. 15, 177). Plaintiff obtained a high school education (Tr. 37). Plaintiff's past relevant work experience included work as a retail cashier/stocker/storekeeper (Tr. 24, 55). Plaintiff alleged disability due to thyroid disease with a history of surgical removal, fibromyalgia, severe chronic pain of muscles down to bone, severe arthritis conditions throughout the body, stomach ulcers, acid reflux, GERD, osteoarthritis conditions, left knee surgery, loss of focus and concentration, memory issues, loss of grip strength, history of carpal tunnel surgery, recent falls, and an unbalanced gait (Tr. 190).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through March 31, 2017, and had not engaged in substantial gainful activity since November 6, 2015, the alleged onset date, through her date last insured ("DLI") (Tr. 17). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease, fibromyalgia, goiter, hypothyroidism, gastroesophageal reflux disease, and carpal tunnel syndrome (Tr. 18). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except that

claimant was able to lift 20 pounds occasionally and 10 pounds frequently; stand and walk six hours per day, and sit six hours per day; occasionally climb ramps and stairs, balance, stoop, and crouch; but never kneel, crawl, or climb ladders/ropes/scaffolds; frequently reach, handle, finger, and feel; but must avoid vibration, hazardous machinery, and heights (Tr. 20). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 20, 22).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could perform her past relevant work (Tr. 24). Accordingly, the ALJ found Plaintiff not disabled (Tr. 24).

### III. Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520. Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with

deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### IV.   Analysis

Plaintiff raises two issues on appeal: (1) whether the ALJ properly weighed the medical opinion evidence, and (2) whether the ALJ's credibility assessment was deficient due to his failure to consider Plaintiff's strong work history. For the reasons that follow, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

### A. Whether the ALJ Properly Weighed the Medical Opinion Evidence

In assessing an individual's disability claim, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v.*

*Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015)[2] (citing 20 C.F.R. § 404.1527(b)). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (quoting 20 C.F.R. § 404.1527(a)(2)[3]) (alterations in the original). If a doctor's statement rises to the level of a "medical opinion," an ALJ must state with particularity the weight given to that opinion and the reasons therefor. *Id.* at 1179. In rendering this determination, the ALJ must consider: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of the doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; and (5) the doctor's area of specialization. *See* 20 C.F.R. § 404.1527(c). While the ALJ is required to consider each of these factors, it is not mandatory that he explicitly address them in his decision. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011).

The Regulations set forth three tiers of sources for medical opinions: (1) treating physicians; (2) non-treating, examining physicians; and (3) non-treating, non-examining

---

[2] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.
[3] Although these regulations have been amended effective March 27, 2017, the new regulations only apply to applications filed on or after that date. *See* 20 C.F.R. § 404.1520c. Because the Plaintiff's application was filed February 21, 2017, this regulation applies to Plaintiff's claim.

physicians. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (citing 20 C.F.R. § 404.1527(c)(1)-(2)).  An examining doctor's opinion is usually accorded greater weight than that of a non-examining physician. *Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 832 (11th Cir. 2017) (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).

Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Lawton*, 431 F. App'x at 833; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004).  Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); *Crawford*, 363 F.3d at 1159-60.  Moreover, the ALJ must clearly articulate these reasons when electing to discount the opinion of a treating physician. *Phillips*, 357 F.3d at 1241.  "[I]f the ALJ fails to give at least great weight to the opinion of a treating physician, he must provide a sufficiently detailed analysis with examples to demonstrate why that opinion is discounted, and provide a rationale that will enable a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Berrios v. Colvin*, No. 14–23860–CIV, 2016 WL 5661634, at *10 (S.D. Fla. Sept. 30, 2016); *see also Hargress v. Soc. Sec. Admin., Comm'r.*, 883 F.3d 1302, 1305–06 (11th Cir. 2018).  The failure to do so is reversible error. *Lewis*, 125 F.3d at 1440.  The Court, however, "will not second guess the ALJ about the

7

weight the treating physician's opinion deserves so long as the ALJ articulates a specific justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

In the end, irrespective of their standing in this hierarchy, an ALJ "is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion." *Huntley*, 683 F. App'x at 832 (citing *Sryock*, 764 F.2d at 835) (emphasis in original); *accord Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) ("Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding."). As such, the opinion of a single physician is not determinative of the claimant's RFC. *See Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."). Accordingly, while the ALJ's RFC determination must be supported by substantial evidence, the assessment of a claimant's RFC and corresponding limitations are "within the province of the ALJ, not a doctor." *Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010).

Plaintiff asserts that the opinions of Dr. Saavedra-Rodriguez, a treating physician, and Dr. Traurig, a non-treating, non-examining physician, establish that Plaintiff cannot meet the requirements of light work as defined in 20 C.F.R. § 404.1567(b) on a regular and continuing basis and demonstrate greater limitations than set forth in the RFC. Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting those opinions. In addition, Plaintiff argues that the ALJ failed to acknowledge that these two opinions support one another. Plaintiff also points to the fact that the opinions of Dr.

Saavedra-Rodriguez and Dr. Traurig were not considered by the State Agency reviewing doctors because they became part of the record after their reviews and argues that makes ALJ's rationales mainly his own lay interpretation of the raw medical data. The Commissioner asserts that the ALJ properly evaluated and weighed Dr. Saavedra-Rodriguez and Dr. Traurig's opinions, provided good cause for according Dr. Saavedra-Rodriguez's little weight, and that substantial evidence supports the ALJ's RFC finding.

### 1. Dr. Saavedra-Rodriguez

In this case, Dr. Saavedra-Rodriguez, a treating physician, completed a Fibromyalgia Residual Functional Capacity Questionnaire in September 2017, in which she opined Plaintiff had significant physical limitations, including that Plaintiff can lift less than 10 pounds frequently; can walk half a block without rest or severe pain, sit 5 minutes at one time and stand for 15 minutes at one time; can sit and stand/walk for less than 2 hours each during an 8-hour workday; needs periods of walking around during the working day every 30 minutes for 10 minutes in duration; needs to shift positions at will from sitting, standing, or walking; and needs to take unscheduled breaks during a workday every 2 hours for 15 to 20 minutes in duration where she will need to lie down or sit quietly; needs to elevate her legs to hear level for 2 hours or 25 to 30 percent of the day; never climb ladders, rarely twist and climb stairs, and occasionally stoop and crouch; has significant limitations in doing repetitive reaching, handling, and fingering, including being limited to 25% of the workday for using hands for grasping, turning and twisting objects, 25% of the workday for fine manipulation and no reaching, including overhead;

and she will have good days and bad days and will likely be absent more than 4 days per month due to her impairments or treatment (Tr. 535-39).

       Plaintiff argues that the ALJ did not properly consider the regulatory directive that treating sources must be given more weight than non-treating sources when they have reasonable knowledge of their patient's impairments. To the contrary, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Lawton*, 431 F. App'x at 833; *Crawford*, 363 F.3d at 1159. The reasons for discounting the opinion of a treating physician must be clearly articulated. *Phillips*, 357 F.3d at 1241. Here, the ALJ gave little weight to Dr. Saavedra-Rodriguez's opinion and clearly articulated his reasoning for doing so. Specifically, the ALJ found Dr. Saavedra-Rodriguez "provided for greater limitations than supported by the record evidence for the period on review" (Tr. 23). More specifically, the ALJ found that "Dr. Rodriguez's own treatment records noted generally normal physical exams during the period on review, with only a few instances of tenderness in the back or limited range of motion in her shoulder a month after surgery when the claimant had a fall." (Tr. 23); *see Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 877 (11th Cir. 2014) (upholding ALJ's decision to give diminished weight to the medical opinion where, among other things, the opinion was unsupported by the doctor's own records, which showed consistently unremarkable findings, a lack of symptoms associated with severe cases of fibromyalgia, and no recommendation for aggressive treatment); *Scott v. Colvin*, 652 F. App'x 778, 780 (11th Cir. 2016) (finding the ALJ demonstrated good cause to discount the treating physician's opinion where the opinion was, among other things, inconsistent

with the medical evidence and the opinion of the state agency consultant); *see also Brown v. Comm'r of Soc. Sec.*, 442 F. App'x 507, 512 (11th Cir. 2011) (finding the ALJ had good cause to not give controlling weight to the treating physician's opinions because the opinions were conclusory and reported on forms that did not reference treatment records or provide adequate explanations).

As discussed by the ALJ, the objective medical findings prior to the expiration of Plaintiff's insured status were generally normal or mild (Tr. 23). Dr. Saavedra-Rodriguez's office treatment records reflect that Plaintiff reported feeling well and consistently exhibited full range of motion in all extremities, along with normal muscle tone and strength, and a normal gait and station (Tr. 23, 307-08, 311-12, 316, 327, 330, 333). Dr. Saavedra-Rodriguez's opinion indicated Plaintiff's symptoms would "constantly" interfere with Plaintiff's attention and concentration (Tr. 536), but her treatment notes provide no objective findings related to Plaintiff's attention or concentration (Tr. 308, 312, 316, 322-23, 327, 474, 478, 482). Dr. Saavedra-Rodriguez also opined, for example, that Plaintiff needed to elevate her legs for two hours of the workday (Tr. 537). There are no treatment notes, however, indicating a need for Plaintiff to elevate her legs (Tr. 308, 312-13, 316-17, 327, 330-31, 333-34, 336, 339); *see Dean v. Soc. Sec. Admin., Comm'r*, 774 F. App'x 584, 586 (11th Cir. 2019) (holding that the ALJ had good cause to discount the opinion of the treating physician that claimant would need to lie down or elevate his legs for five hours each day where, among other things, the treatment notes showed normal strength in all extremities); *Mennella v. Comm'r of Soc. Sec.*, 697 F. App'x 665, 666 (11th Cir. 2017) (concluding the ALJ had good cause to assign less

than controlling weight to the treating physician's opinion that claimant would need to elevate her legs where treatment records were devoid of advice to claimant to elevate her legs). While Plaintiff did have some degenerative changes in her spine, the ALJ accommodated her condition by limiting her to a reduced range of light work (Tr. 20-24).

Under a substantial evidence standard of review, Plaintiff must do more than point to evidence in the record that supports her position; instead, she must show the absence of substantial evidence supporting the ALJ's conclusion. *See Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (citing *Barnes v. Sullivan*, 932 F. 2d 1356, 1358 (11th Cir. 1991)). Overall, the generally unremarkable findings in Dr. Saavedra-Rodriguez's treatment records support the ALJ's decision to give little weight to Dr. Saavedra-Rodriguez's opinion. The ALJ properly evaluated and weighed Dr. Saavedra-Rodriguez's opinion and articulated good cause for discounting it. *See Hargress*, 883 F.3d at 1306 ("The ALJ's stated reason for discounting [the doctor's] opinion—that it was inconsistent with his own medical records and the record as a whole—was adequate and amounts to good cause."). Because substantial evidence supports the ALJ's findings, remand is not warranted.

### 2. Dr. Traurig

Dr. Traurig, a non-examining physician, opined Plaintiff can lift and carry 10 pounds occasionally; occasionally use her right hand for reaching, handling, fingering, feeling, pushing, and pulling; can sit for 3 hours at a time and 8 hours total per day; stand for 1 hour at a time and for 3 hours total per day; and walk for 30 minutes at a time and for 1 hour total per day (Tr. 741). The ALJ assigned "little weight" to Dr. Traurig's

opinion. Plaintiff contends that the ALJ failed to provide "good reasons" for this assessment. The ALJ need not, however, provide good reasons for discounting Dr. Traurig's opinion. *See Lawton*, 431 F. App'x at 833; *Crawford*, 363 F.3d at 1159. Because Dr. Traurig never treated or examined Plaintiff, his opinion is not due any special weight or consideration. *See Crawford*, 363 F.3d at 1160; *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).

The ALJ explained that he assigned little weight to Dr. Traurig's opinion, which opined that Plaintiff meets the criteria for fibromyalgia, because it appeared to be based on record evidence after the DLI as Plaintiff was not diagnosed with fibromyalgia until after the DLI. Plaintiff argues that this finding is undermined by the ALJ's finding that fibromyalgia is a "severe impairment." (*See* Tr. 18). Plaintiff contends that this is an internal inconsistency and that it cannot, therefore, be a reasonable basis to discount Dr. Traurig's opinion. The Court disagrees. The ALJ expressly noted that Dr. Traurig opined Plaintiff met the criteria for fibromyalgia. The ALJ also noted that the fibromyalgia diagnosis came after Plaintiff's insured status expired "although there was evidence of symptoms of multiple joint pains prior to the DLI" (Tr. 23). The ALJ went on to explain that the severe limitations opined by Dr. Traurig were not consistent with the generally unremarkable objective evidence pre-dating the expiration of Plaintiff's insured status and concluded "the evidence during the period on review before the DLI does not support Dr. Traurig's opinion that the claimant was limited to a reduced range of sedentary work" (Tr. 23). As such, it was logical for the ALJ to reason that Dr. Traurig must have relied on later evidence to conclude Plaintiff was significantly limited (Tr. 23). Moreover, it is the

functional limitations caused by the impairment, not the impairment itself, that affects the Plaintiff's ability to work. *See* 20 C.F.R. § 404.1545(a); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (severity of impairment must be measured in terms of their effect on the ability to work, not just in terms of deviation from purely medical standards of bodily imperfection or normality). For these same reasons, Plaintiff's assertion that the ALJ could only speculate that Dr. Traurig based his opinion on evidence outside the relevant time period and any such ambiguity or insufficiency in the record required the ALJ to contact Dr. Traurig to clarify is unavailing.

In addition, the ALJ supported his decision to discount Dr. Traurig's opinion with a review of the unremarkable medical records discussed above. *See, e.g., Sims*, 706 F. App'x at 600-02 (recognizing that substantial evidence supported the ALJ's finding that claimant could perform light work where examination showed generally unremarkable findings and improvement over time); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876-77 (11th Cir. 2012) (concluding that substantial evidence supported the ALJ's RFC assessment for light work where, among other things, the examining physician made unremarkable findings and indicated claimant retained the capacity for work-related activities). Finally, the ALJ's findings were supported by the evaluation of a non-treating physician (Tr. 23). *Cf. Marbury v. Sullivan*, 957 F.2d 837, 841 n.1 (11th Cir. 1992) (Johnson, J., concurring specially).

### 3. Consistency with Underlying Record

Plaintiff asserts that the ALJ improperly discussed the opinions of Drs. Saavedra-Rodriguez and Traurig in isolation from each other and failed to acknowledge that they

support each other's assessment of Plaintiff's abilities in relation to the ALJ's RFC. Plaintiff also asserts that the ALJ failed to consider that both opinions were consistent with the underlying record. Plaintiff argues that this is violative of 20 C.F.R. § 404.1527(c)(4), which sets forth that consistency of a medical opinion with the record as a whole is one of the factors to be considered by the ALJ when deciding the weight to give any medical opinion. The Court finds there is no error here. While the ALJ is required to consider each of the factors found in § 404.1527(c), it is not mandatory that he explicitly address them in his decision. *Lawton*, 431 F. App'x at 833. Moreover, while the record may contain some evidence that is contrary to the ALJ's determination, the Court is not permitted to reweigh the importance attributed to the medical evidence. *Id.* (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)).

Finally, Plaintiff contends that Dr. Saavedra-Rodriguez and Dr. Traurig's opinions were dated after the State Agency medical consultants reviewed the record, making the ALJ's rationales mainly of his own lay interpretation of the raw medical data. Plaintiff continues that the ALJ is not free to simply rely on his own lay interpretation of the medical data when the record contains a contradictory opinion from a medical expert. Contrary to the Plaintiff's contention, this is not a situation where the ALJ improperly substituted his opinion for that of a physician. *See Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (noting that, even if the non-examining doctor was unable to review all the medical records, the ALJ, who made the ultimate determination on the RFC, had access to the entire record). Such an argument applies, instead, to scenarios where the ALJ reaches medical conclusions about the claimant's condition, rather than

15

legal conclusions about the claimant's ability to work. *See Marbury*, 957 F.2d at 840-41 (Johnson, J., concurring specially). While the former constitutes an error of law, the latter reflects an ALJ's proper exercise of her role as "an adjudicator responsible for assessing [the claimant's] RFC." *Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014). In short, the ALJ did not commit error here. The ALJ simply performed his duty of weighing all of the evidence of record and resolving the inconsistencies. *See* 20 C.F.R. §§ 404.1520b, 404.1527, 404.1545, 404.1546(c).

### B. Whether the ALJ's Credibility Assessment Was Deficient Due to His Failure to Consider Plaintiff's Strong Work History

Plaintiff argues that the ALJ committed reversible error in assessing her credibility[4] by failing to consider her exemplary work history of covered earnings in 76 quarters between 1993 and 2012 (Tr. 186-87). Specifically, Plaintiff argues that although she "is not suggesting that the credibility factor of work history automatically carries more weight than the other factors, or that her stellar work history *necessarily* entitled her to enhanced credibility … it cannot be reasonably denied that the Agency's rules requires (1) consideration of the claimant's historical willingness to work in the credibility finding; and (2) that the ALJ did not acknowledge or discuss it." (Doc. 15 at 33) (emphasis in the original). The Commissioner counters that the ALJ considered Plaintiff's subjective complaints under the proper legal standards, and substantial evidence supports the ALJ's decision to discount those complaints; therefore, the Court should affirm his decision.

---

[4] The Court recognizes the SSA no longer uses the term "credibility" when evaluating whether a claimant's subjective complaints are consistent with and supported by the record. Because the parties employ this term in their memorandum, however, the Court utilizes it here for consistency and ease of reference. (*See* Doc. 15 at 32 n.12).

The evaluation of a claimant's subjective symptoms is governed by the "pain standard." *Dyer*, 395 F.3d at 1210. Under this standard, the claimant must show "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from the condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Id.* (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Where a claimant satisfies this pain standard, the ALJ then assess the intensity and persistence of the symptoms to determine how they limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c); *see also* SSR 16-3p. Considerations relevant to this evaluation include: the objective medical evidence; evidence of factors that precipitate or aggravate the claimant's symptoms; medications and treatments available to alleviate those symptoms; the type, dosage, effectiveness, and side effects of such medications and treatments; how the symptoms affect the claimant's daily activities; and the claimant's past work history. *Id.* If the ALJ elects not to credit the claimant's subjective testimony, he must articulate explicit and adequate reasons. *Dyer*, 395 F.3d at 1210 (quotation and citation omitted).

Contrary to Plaintiff's argument, the Eleventh Circuit does not require that an ALJ summarize the entire record in his decision or "cite particular phrases or formulations" in assessing credibility. *Dyer,* 395 F.3d at 1210–11. In fact, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the district court] . . . to conclude that [the ALJ] considered her medical condition as a whole." *Id.*

at 1211 (internal quotations omitted). Thus, if an ALJ provides a clearly articulated credibility finding supported by substantial evidence, the finding will not be disturbed on appeal. *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995) (citation omitted).

Here, the ALJ has done so. The ALJ evaluated various factors, including the type and effectiveness of Plaintiff's medication and other factors concerning her functional limitations. *See* 20 C.F.R § 404.1529(c)(3)(iv),(vii). The ALJ found that those factors weighed against the alleged severity of Plaintiff's symptoms (Tr. 22). Accordingly, the Court finds that in reaching his credibility determination, the ALJ applied the correct legal standards and his findings are supported by substantial evidence.

Further, although the ALJ did not specifically discuss Plaintiff's work history in his credibility analysis, the ALJ clearly considered Plaintiff's work history at other steps of the sequential evaluation proceedings. For example, the ALJ specifically considered Plaintiff's work history at step four, along with her earnings records in determining her DLI for purposes of disability insurance benefits (Tr. 17, 24, 38-39). Additionally, at the hearing, the ALJ elicited testimony from Plaintiff and the vocational expert regarding Plaintiff's past relevant work (Tr. 38-39, 55, 63-66). Moreover, Plaintiff's certified earnings record was a part of the administrative record. (Tr. 186-87). Therefore, the ALJ's decision shows that he was aware of Plaintiff's strong work history throughout the evaluation process. *See Coleman v. Astrue,* No. 8:11-CV-1783-T-TGW, 2012 WL 3231074, at *5 (M.D. Fla. Aug. 6, 2012) (affirming the ALJ's credibility determination despite not explicitly discussing the plaintiff's past work and stating that "[w]hile the law judge did not discuss the plaintiff's work history specifically in the context of her credibility finding,

she obviously considered the plaintiff's work history in making her decision" because the ALJ elicited testimony from the plaintiff and the plaintiff's earnings records were part of the administrative record); *Neff v. Saul*, No. 8:18-cv-3040-T-SPF, 2020 WL 1181952, at *5-6 (M.D. Fla. Mar. 12, 2020) (finding no reversible error where ALJ did not specifically discuss plaintiff's work history in his credibility analysis); *Henley v. Comm'r of Soc. Sec.*, No. 8:19-cv-3011-T-MAP, 2021 WL 321503, at *6 (M.D. Fla. Feb. 1, 2021) (finding no error in ALJ's credibility analysis despite not explicitly discussing plaintiff's work history); *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (finding the ALJ's silence on claimant's significant work history "not enough to negate the substantial evidence supporting the adverse credibility finding").

Finally, Plaintiff relies on *Lafond v. Comm'r of Soc. Sec.,* No. 6:14–cv–1001–Orl–DAB, 2015 WL 4076943, at *9 (M.D. Fla. July 2, 2015) for the proposition that an ALJ's decision should be remanded if the ALJ failed to consider a plaintiff's strong work history when assessing credibility. Although the Court in *Lafond* found the ALJ failed to consider the plaintiff's strong work record when assessing his credibility, the Court did not remand the ALJ's disability determination solely on that basis.[5] Instead, the court remanded the ALJ's decision on its conclusion that the ALJ's credibility assessment, as a whole, was

---

[5] The Court notes that there is no binding precedent requiring remand of an ALJ's decision solely for failure to explicitly discuss a plaintiff's work history in his credibility assessment. *See Lafond,* 2015 WL 4076943, at *9 (stating that the Eleventh Circuit has not ruled on this issue); *see also Coleman*, 2012 WL 3231074, at *5 (rejecting a plaintiff's argument that the ALJ's credibility assessment was deficient for failure to consider the plaintiff's work history because the plaintiff did not cite "any authority suggesting that the [ALJ] is required to discuss the plaintiff's work history in the context of a credibility determination" and the Regulations do not list "prior work record" as one of the specified factors to take into account in assessing credibility).

not based on substantial evidence. *See id.* at *5–11.[6] Unlike *Lafond*, the ALJ here provided the Court with a clearly articulated credibility assessment supported by substantial evidence. Accordingly, *Lafond* is inapposite. *See Rios v. Acting Comm'r of Soc. Sec.*, 8:16-CV-152-T-PDB, 2017 WL 4216467, at *10 (M.D. Fla. Sept. 22, 2017) (distinguishing *Lafond* and other cases cited in *Lafond* because they were "inconsistent with binding precedent requiring deference to a 'clearly articulated credibility finding with substantial supporting evidence'"). In sum, the Court finds no reversible error in this or any other aspect of the ALJ's credibility analysis.

### V. Conclusion

Accordingly, after consideration, it is hereby **ORDERED**:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

**ORDERED** in Tampa, Florida, on this 30th day of March, 2021.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

---

[6] For example, in addition to the lack of mention of the plaintiff's work history, the court found that "the ALJ erred in finding that the objective medical evidence and records did not support her allegations of pain and limitations," "the ALJ failed to properly evaluate Plaintiff's activities of daily living," and the ALJ did not consider the plaintiff's reasons for non-compliance with treatment before discounting her subjective complaints on this basis. *Lafond,* 2015 WL 4076943, at *5, 8, 10.